# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| **MAURICE PENDLEY, II,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.:  6:21-cv-15-ACA |
| } | |
| **SOCIAL SECURITY** } | |
| **ADMINISTRATION,** } | |
| **COMMISSIONER,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OPINION

Plaintiff Maurice Pendley, II appeals the decision of the Commissioner of Social Security denying his claims for a period of disability, disability insurance, and supplemental security income. Based on the court's review of the administrative record and the parties' briefs, the court **WILL AFFIRM** the Commissioner's decision.

### I.   PROCEDURAL HISTORY

In December 2018, Mr. Pendley applied for a period of disability, disability insurance benefits, and supplemental security income, alleging his disability began on April 25, 2018. (R. at 10, 159–67). The Commissioner initially denied Mr. Pendley's claims on February 22, 2019. (*Id.* at 90–101). Mr. Pendley then

requested a hearing before an Administrative Law Judge ("ALJ"). (*Id*. at 102—03). After holding a hearing where Mr. Pendley had the assistance of an attorney (*id.* at 37–57), the ALJ issued an unfavorable decision on January 28, 2020 (*id*. at 10–24). The Appeals Council declined Mr. Pendley's request for review (*id*. at 1–5), making the Commissioner's decision final and ripe for the court's judicial review, *see* 42 U.S.C. § 405(g).

## II.   STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted). "Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quotation marks omitted). The court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgement for that of the [ALJ]." *Winschel*, 631 F.3d at 1178 (quotation marks omitted). The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted).

Despite the deferential standard for review of claims, the court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Henry*, 802 F.3d at 1267 (quotation marks omitted). Moreover, the court must reverse the Commissioner's decision if the ALJ does not apply the correct legal standards. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

### III. THE ALJ'S DECISION

To determine whether an individual is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

Here, the ALJ determined that Mr. Pendley had not engaged in substantial gainful activity since his alleged disability onset date of April 25, 2018. (R. at 12). The ALJ found that Mr. Pendley had severe impairments in the form of degenerative

disc disease with lumbar fusion,[1] anxiety, and degenerative joint disease in both knees. (*Id*. at 12–13). The ALJ also found that Mr. Pendley had a non-severe impairment of "hiatal hernia with three ulcers and 'collapsed stomach[ ].'"[2] (*Id.* at 13). Finally, the ALJ found that, although Mr. Pendley had testified about having a vision impairment, there was "no evidence of any limitations due to his vision as he can see with his contacts. There are no vision records in evidence." (*Id.*). The ALJ concluded that Mr. Pendley did not suffer from an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 13–15).

After considering the evidence of record, the ALJ determined that Mr. Pendley had the residual functional capacity to perform sedentary work with additional limitations. (R. at 15–22). Based on this residual functional capacity and the testimony of a vocational expert, the ALJ found that Mr. Pendley was unable to perform any past relevant work. (*Id*. at 22). However, the ALJ found that jobs existed in significant numbers in the national economy that Mr. Pendley could

---

[1] A lumbar fusion is "an operative procedure to accomplish bony ankylosis [a union between two bones that are not supposed to be united] between two or more vertebrae." Spinal Fusion, Stedman's Medical Dictionary (2014); *see also* Synostosis, Stedman's Medical Dictionary (2014); Minimally Invasive Spine Surgery, Attorney's Dictionary of Medicine ("[L]umbar fusion (grafting adjacent intervertebral disks to one another) [is one of] the two spinal procedures most often performed using minimally invasive techniques.").

[2] A hiatal hernia is a "hernia of a part of the stomach." Hiatal Hernia, Stedman's Medical Dictionary (2014).

perform, including as a lens inserter, order clerk, and cuff folder. (R. at 22–23). Accordingly, the ALJ determined that Mr. Pendley had not been under a disability, as defined by the Social Security Act, between the alleged onset date through the date of the decision. (*Id*. at 23).

## IV. DISCUSSION

Mr. Pendley contends that substantial evidence does not support the ALJ's decision because (1) the objective medical evidence established a history of serious back, knee, and feet problems consistent with his hearing testimony; (2) he spends 20% of each workday doing physical therapy, which according to the vocational expert's testimony would mean he could not perform any jobs in the national economy; and (3) the ALJ's hypothetical question to the vocational expert did not include his lack of peripheral vision in his right eye.[3] (Doc. 14 at 13–19).

---

[3] Mr. Pendley also states, in an entirely conclusory manner, that "the ALJ did not correctly evaluate the intensity and persistence of the severity of the claimant's mental impairments and its [sic] limiting effects." (Doc. 14 at 14). The reference to "mental impairments" may be a typo, intended to refer to "physical impairments," given that the rest of Mr. Pendley's brief discusses his physical impairments. (*See id.* at 14–19). To the extent he intended to challenge the ALJ's decision with respect to Mr. Pendley's mental impairments, however, he has abandoned that issue by failing to adequately brief it. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009) ("[A]n appellant's simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our considering the issue . . . ."); *see also Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

1. Objective Medical Evidence

Under Eleventh Circuit precedent, a claimant attempting to establish disability through testimony of pain or other subjective symptoms must show evidence of an underlying medical condition and either (1) "objective medical evidence that confirms the severity of the alleged pain arising from that condition" or (2) "that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation marks omitted). The Commissioner does not dispute that Mr. Pendley presented evidence of underlying medical conditions relating to his back, hips, and knees. (*See* doc. 17 at 4–7). Thus, the only question before the court is whether substantial evidence supports the ALJ's determination that Mr. Pendley's "statements concerning the intensity, persistence and limiting effects of these impairments are not consistent with the objective medical evidence." (R. at 17).

"If a claimant testifies as to his subjective complaints of disabling pain and other symptoms . . . , the ALJ must clearly articulate explicit and adequate reasons for discrediting the claimant's allegations of completely disabling symptoms." *Dyer*, 395 F.3d at 1210. The ALJ need not make "an explicit finding as to credibility, [but] . . . the implication must be obvious to the reviewing court." *Id.* The credibility determination must be sufficient to enable the court "to conclude that [the ALJ]

considered [the claimant's] medical condition as a whole." *Id.* (first alteration in original) (quotation marks omitted).

Mr. Pendley contends that the objective medical evidence shows that he has had multiple surgeries, is in physical therapy, uses a knee brace and a cane, has had imaging that shows degenerative changes in his spine and hips and has had physical examinations showing decreased sensation, tenderness, reduced range of motion, and issues walking. (Doc. 14 at 15–17). The ALJ acknowledged all of that objective medical evidence and concluded that it established Mr. Pendley had exertional and non-exertional limitations, but that the evidence was not consistent with the extent of the limiting effects he alleged. (R. at 16–19, 21). In making that determination, the ALJ considered Mr. Pendley's statements that physical therapy was helping his pain, his testimony about the range of daily activities he could perform, and medical records showing that the physician Mr. Pendley was seeing for his back pain had released him to light work, which was less limiting than the ALJ's determination of his residual functional capacity. (*Id.* at 18–19, 21).

Mr. Pendley argues that "[t]he ALJ has failed to rebut these pain allegations made by claimant." (Doc. 14 at 17). But the record shows that the ALJ weighed both Mr. Pendley's testimony and the objective medical evidence and came to a conclusion supported by "such relevant evidence as a reasonable person would accept as adequate" that Mr. Pendley's testimony was not entirely consistent with

the objective evidence. *Henry*, 802 F.3d at 1267. This court cannot "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel*, 631 F.3d at 1178 (quotation marks omitted).

Mr. Pendley's final argument about his pain testimony is that the ALJ erroneously stated that he does not take pain medications. (Doc. 14 at 15). In her decision, the ALJ stated that Mr. Pendley "initially took medications after his surgeries, but now takes only Suboxone and Klonopin, prescribed by the Fritz Clinic for his opioid dependence." (R. at 16). The record confirms the ALJ's understanding. (*See id.* at 692–708) (records from the Fritz Clinic stating that the physician was prescribing Suboxone for Mr. Pendley's opioid dependence). Although Mr. Pendley testified that the Suboxone helps with his pain (*id.* at 50–51), the ALJ did not misstate the record, which shows that the prescription is actually for Mr. Pendley's opioid dependence. But even if doctors had prescribed Suboxone for Mr. Pendley's pain instead of his opioid dependence, substantial evidence would still support the ALJ's determination that objective evidence in the record failed to substantiate the extent of the pain alleged by Mr. Pendley.

2. Time Spent Doing Physical Therapy

Mr. Pendley's next argument is that he spends at least 20% of his workday doing physical therapy and the vocational expert testified that being off task for that amount of time would preclude him from working. (Doc. 14 at 17). However,

contrary to Mr. Pendley's assertion, he did not testify that he spends at least 20% of his workday doing physical therapy; he testified only that he "[u]sually" spends his "daytime hours" in physical therapy, his bed, and his chair. (*See* r. at 49). Moreover, Mr. Pendley does not point to any medical records or other evidence showing that he spends 20% of his workday doing physical therapy, nor to any caselaw holding that the ALJ has a duty to "rebut" his generalized testimony. (*See* doc. 14 at 17). He therefore has not shown that the ALJ erred by failing to credit his testimony about the amount of physical therapy he does.

3.  Peripheral Vision

Mr. Pendley's third argument is that ALJ erred in posing the hypothetical question to the vocational expert because she omitted the lack of peripheral vision in his right eye, which he asserts he proved through his testimony. (Doc. 14 at 17–19).

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). But the ALJ is "not required to include findings in the hypothetical that the ALJ has properly rejected as unsupported." *Crawford*, 363 F.3d at 1161; *see also McSwain v. Bowen*, 814 F.2d 617, 619–20 & n.1 (11th Cir. 1987) (holding that the ALJ did

not err in asking a hypothetical question that assumed only the restrictions supported by the evidence and omitted unsupported restrictions).

At the second step of the sequential evaluation process, the ALJ determined that Mr. Pendley did not have a vision impairment at all because, although he alleged vision issues during his testimony, he testified that he can see with contacts and the record contained no objective evidence of vision limitations. (R. at 13). Mr. Pendley argues that the ALJ could not make that determination because she failed to order a consultative examination to assess his peripheral vision, in violation of her duty to develop a full and fair record. (*See* doc. 14 at 18).

The ALJ has a basic duty to develop a full and fair record. *Kelley v. Heckler*, 761 F.2d 1538 (11th Cir. 1985). However, "the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F. 3d 1272, 1276 (11th Cir. 2003). Mr. Pendley relies on *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981), in which the Eleventh Circuit stated in dicta that the ALJ's obligation to develop a full and fair record "exists even if the claimant is represented by counsel." The Eleventh Circuit's holding in *Cowart*, however, was limited to the "special duty" that arises "when an unrepresented claimant unfamiliar with hearing procedures appears before [the ALJ]." *Id.* (quotation marks omitted). Here, Mr. Pendley was represented by counsel at his hearing, so the ALJ did not bear any heightened or special duty to

10

develop the record by ordering a consultative examination, especially where the medical evidence submitted failed to show that Mr. Pendley had any peripheral vision impairment.

## V.     CONCLUSION

Substantial evidence supports the ALJ's denial of Mr. Pendley's application for a period of disability, disability insurance, and supplemental security income, and this court **WILL AFFIRM** the Commissioner's decision.

The court will enter a separate final order consistent with this memorandum opinion.

**DONE** and **ORDERED** this June 7, 2022.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE